## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

**EVANGLENE BADONIE**,

   Plaintiff,

 vs.         No. **CIV 05-1205 MCA/WPL**

**THE UNITED STATES OF AMERICA,**

   Defendant.

### MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Defendant's *Motion for Judgment on the Pleadings, Pursuant to Fed.R.Civ.P. 11(c), or, in the Alternative, Motion for Summary Judgment* [Doc. 25], filed October 11, 2006, and *Defendant's Motion to Enter Order Granting Motion for Judgment on the Pleadings, Pursuant to Fed.R.Civ.P. 12(c), or in the Alternative, Motion for Summary Judgment or Motion to Dismiss Pursuant to Fed.R.Civ.P. 41(b) Failure to Follow Court Orders* [Doc. 43], filed May 31, 2007. Having considered the parties' submissions, the relevant law, and otherwise being fully advised in the premises, the Court grants both motions.

## I. FACTUAL BACKGROUND

On Saturday, October 4, 2003, Plaintiff Evanglene Badonie was working at the Navajo Nation's Shiprock Fair when a rope she was using to release a steer wrapped around her fingers, pulling them to the side and tearing the skin. Though the skin was torn, Plaintiff's fingers did not begin to bleed until she reached a waiting ambulance. It was then

that Plaintiff's husband took a careful look at her hand and informed her that he could see bone.  Through deposition testimony, Plaintiff described herself as nauseated, in pain, and close to fainting.  [Doc. 25; Exh. B, depo. of Evanglene Badonie at 18-20].

Plaintiff was transported by ambulance to the emergency room at the Northern Navajo Medical Center (NNMC), where she was examined by Dr. Patricia Breeden.  Dr. Breeden diagnosed a "degloving" injury to Plaintiff's fourth and fifth right-hand fingers, and an "obvious amputation" of those digits.  [Doc. 26 at 2; Exh. C].  Dr. Breeden ordered X-rays, antibiotics, and pain medication, and contacted Dr. William Pratt, the NNMC's on-call orthopedic surgeon.  [Id.].

Once summoned, Dr. Pratt came to the facility to evaluate Plaintiff.  [Doc. 26; Exh. D, affidavit of William B. Pratt, M.D. at 1].  According to Dr. Pratt, Plaintiff had

> suffered a partial amputation of the distal tips of her fourth and fifth fingers on her right hand.  The rope involved in the injury had effectively pulled most of the tissue away from the bone of the fingers and broken the tip of the fourth finger.  These are often described as 'degloving' or 'avulsion' type injuries.  Replantation of such amputated parts and in particular, fingers, are rarely successful as the very small vessels to the fingers are most often damaged beyond repair or reanastomosis, meaning reattachment to vessels in the amputated part.

[Id. at 2].  Dr. Pratt performed an anesthetic block for pain relief and telephoned Dr. Tahseen Cheema, the on-call hand surgeon at the University of New Mexico Health Sciences Center. Dr. Pratt explained Plaintiff's injuries to Dr. Cheema, who advised against attempting to revascularize the fingertips.  Dr. Pratt relayed Dr. Cheema's opinion to Plaintiff and also shared with her his own opinion, which was that her fingertips would not survive and would

have to be removed.  He also explained to Plaintiff "what could potentially happen if [the fingertips] were not removed."  [Id.].  Because Plaintiff refused to consent to amputation, Dr. Pratt instructed her to return to the NNMC the next day, Sunday, October 5, 2003, and to ask for him.  His belief was that once Plaintiff had had some time to consider the potential complications of leaving dead tissue in place, she would agree to the removal of the fingertips.  [Id.].

Plaintiff did not see Dr. Pratt or go back to the emergency room the next day.  Instead, late on the afternoon of Sunday, October 5, 2003, she went back to the NNMC and spoke to a triage nurse, informing her that she was out of pain medication.  [Doc. 26 at 3; Exh. B at 34-37].  According to Plaintiff, the nurse was rude, telling her that her pain medication should have lasted until the next day.  [See Doc. 26; Exh. B at 36, 41].  Dissatisfied with this response, Plaintiff left.  That night, Plaintiff took Tylenol for pain she described as comparable to "putting all of [her] kids' labor pains together."  [Id.; Exh. B at 36].

The next day, Monday, October 6, 2003, Plaintiff was still in pain.  She spoke to a few friends, who advised her to seek a second opinion.  On Monday evening, after noticing that her fingers were turning black, Plaintiff sought treatment at the emergency room of Rehoboth McKinley Christian Hospital (RMCH).  [Doc. 26; Exh. B at 43-45].  The first physician Plaintiff saw at the RMCH was Dr. Gerald Robertson.  At his deposition, Dr. Robertson learned for the first time from counsel for Defendant about the care Plaintiff received from Dr. Pratt at the NNMC.  After listening to counsel's summary, Dr. Robertson described the treatment rendered by Dr. Pratt and the NNMC as "by far . . . exceed[ing] what we—or what

I could have expected from them and is already into the realm of orthopedic specialist and subspecialist care, which I cannot quarrel with at all." [Id.; Exh. E, depo. of Gerald Robertson, M.D. at 18].

At the time he saw her, Dr. Robertson believed that Plaintiff's fingertips had turned gangrenous. Accordingly, he admitted her to Dr. Lawrence Andrade for inpatient care. [Doc. 26; Exh. E at 18-19]. Dr. Andrade completed a medical history and discussed the case with Dr. Bryan Kamps, an orthopedist. Although Dr. Kamps was not on call at that time, he agreed to come to the hospital to evaluate Plaintiff. The medical history that Dr. Andrade completed reveals his belief that Plaintiff would "most likely need a partial amputation due to the fact that her fingers [were] already necrotic." [Id.; Exh. F, dictated medical history from Lawrence Andrade, M.D. at 9-10]. On Wednesday, October 8, 2003, Dr. Kamps completed the partial amputation of Plaintiff's fourth and fifth right-hand fingertips. His pre- and postoperative diagnoses were the same: *Traumatic partial amputation of the right ring and small fingers with subsequent development of gangrene in the tips of the fingers*. Since the amputation, Plaintiff has not required additional physical care for her fingers but has relied on traditional healing ceremonies for emotional support. [Id.; Exh. B at 60-61].

## II. PROCEDURAL HISTORY

On November 17, 2005, Plaintiff, represented by counsel, filed a *Complaint* against Defendant United States of America pursuant to the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671-2680, alleging that doctors at the NNMC committed medical malpractice in failing properly to diagnose and treat her, and in reattaching her fingers. [Doc. 1 at 2; Doc.

13 at unnumbered 2]. On May 1, 2006, Magistrate Judge William P. Lynch entered an *Initial Pretrial Report*, which, among other things, set July 10, 2006 as the date by which Plaintiff was required to identify in writing any expert witnesses upon whom she intended to rely at trial, and also to provide expert reports pursuant to Fed.R.Civ.P. 26(a)(2)(B). [Doc. 13 at unnumbered 6]. On July 13, 2006, counsel for Plaintiff filed an unopposed motion to extend the expert-report deadline until August 10, 2006. Magistrate Judge Lynch granted the motion. [See Docs. 15, 16]. On August 10, 2006, Plaintiff filed a second unopposed motion to extend the expert-report deadline until August 17, 2006. Magistrate Judge Lynch granted this motion as well. [See Docs. 19, 20]. On August 17, 2006, counsel for Plaintiff filed motions to withdraw and to stay the matter for 60 days while Plaintiff secured new representation. [See Docs. 21, 22].

After amended and corrected motions were filed, this Court, by *Order* entered February 28, 2007, allowed counsel's withdrawal and acknowledged Plaintiff as a *pro se* litigant. [See Doc. 41]. In a separately filed *Order* of the same day, the Court also instructed Plaintiff to respond within 24 days to the *Motion for Judgment on the Pleadings, Pursuant to Fed.R.Civ.P. 12(c), or, in the Alternative, Motion for Summary Judgment*, which Defendant had filed on October 11, 2006. [See Docs. 25, 42]. Plaintiff failed to comply with the Court's 24-day deadline. On May 31, 2007, Defendant moved the Court for an order granting its earlier motion for judgment on the pleadings or, in the alternative, for summary judgment, contending that "Plaintiff failed, and has continued to fail, to provide any evidence in support of her case including expert medical testimony in this medical malpractice action."

[Doc. 44 at 1].   As of June 25, 2007, Plaintiff has not responded to Defendant's motion.

## III. ANALYSIS

### A. Fed.R.Civ.P. 12(c) and Fed.R.Civ.P. 56

"A motion for judgment on the pleadings under Rule 12(c) is treated as a motion to dismiss under Rule 12(b)(6)." Atlantic Richfield Co. v. Farm Credit Bank of Wichita, 226 F.3d 1138, 1160 (10th Cir. 2000).  Dismissal of a complaint under Fed.R.Civ.P. 12(b)(6) is appropriate only if "'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" GFF Corp. v. Associated Wholesale Grocers, Inc., 130 F.3d 1381, 1384 (10th Cir.1997) (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)).  "The court's  function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." Miller v. Glanz, 948 F.2d 1562, 1565 (10th Cir.1991).  Accordingly, all well-pleaded factual allegations in the complaint are accepted as true and viewed in the light most favorable to the nonmoving party. GFF Corp., 130 F.3d at 1384.

Alternatively, summary judgment under Fed.R.Civ.P. 56(c) may be appropriate and "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).  "When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of

the adverse party's pleading. . . ." Fed.R.Civ.P. 56(e).  Rather, "the adverse party's response

. . . must set forth specific facts showing that there is a genuine issue for trial."  Id.

Judgment is appropriate "as a matter of law" if the nonmoving party has failed to make an

adequate showing on an essential element of its case, as to which it has the burden of proof

at trial.  See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Lopez v. LeMaster, 172

F.3d 756, 759 (10th Cir. 1999).

In order to warrant consideration by the Court, the factual materials accompanying

a motion for summary judgment must be admissible or usable at trial (although they do not

necessarily need to be presented in a form admissible at trial).  See Celotex, 477 U.S. at 324.

It is not the court's role, however, to weigh the evidence, assess the credibility of witnesses,

or make factual findings in ruling on a motion for summary judgment.  Rather, the Court

assumes the evidence of the non-moving party to be true, resolves all doubts against the

moving party, construes all evidence in the light most favorable to the non-moving party, and

draws all reasonable inferences in the non-moving party's favor.  See Hunt v. Cromartie, 526

U.S. 541, 551-52 (1999).

**B. The Federal Tort Claims Act**

Pursuant to the Federal Tort Claims Act (FTCA), the United States is made liable

(within the scope of its waiver of sovereign immunity)

> for personal injury . . . caused by the negligent or wrongful act
> or omission of any employee of the Government while acting
> within the scope of his office or employment, under
> circumstances where the United States, if a private person,
> would be liable to the claimant in accordance with the law of the

7

place where the act or omission occurred.

28 U.S.C. § 1346(b)(1).  Because this Court must apply the substantive law of the place where the alleged tortious act took place, the Court first considers the elements of a medical malpractice action under the law of New Mexico.  See Franklin v. United States, 992 F.2d 1492, 1495 (10th Cir. 1993) ("[W]e resolve questions of liability under the FTCA in accordance with the law of the state where the alleged tortious activity took place."); Flynn v. United States, 902 F.2d 1524, 1527 (10th Cir. 1990) ("The court must apply the law of the place where the alleged negligence occurred.").

In New Mexico, to prove medical malpractice, the plaintiff bears the burden of showing that (1) the defendant owed the plaintiff a duty recognized by law; (2) the defendant breached that duty by departing from the proper standard of medical practice recognized in the community; and (3) the acts or omissions complained of proximately caused the plaintiff's injuries.  Blauwkamp v. Univ. of New Mexico Hosp., 836 P.2d 1249, 1252 (N.M.App. 1992).  "In a medical malpractice case, because of the technical and specialized subject matter, expert medical testimony is usually required to establish departure from recognized standards in the community." Lopez v. Southwest Cmty. Health Servs., 833 P.2d 1183, 1188 (N.M.App. 1992).  Expert testimony also is generally required to establish causation.  Buchanan v. Downing, 394 P.2d 269, 272 (N.M. 1964).

"A defendant seeking summary judgment in a medical malpractice action bears the initial burden of negating at least one of the essential elements upon which the plaintiff's claims are grounded." Blauwkamp, 833 P.2d at 1252.  In such an action, a showing by the

defendant that the plaintiff lacks an expert witness is sufficient to support a motion for summary judgment "on the basis that 'the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim.'" Id. at 1253 (*quoting* Celotex, 477 U.S. at 331).

In this case, despite two deadline extensions by the magistrate judge, Plaintiff still has not disclosed or otherwise indicated that she has secured an expert witness to support her contention that the NNMC and its providers committed medical malpractice. As a consequence, the Court concludes that Defendant is entitled to entry of summary judgment.

## IV. CONCLUSION

Without an expert witness, Plaintiff in this matter cannot show that the treatment she received at the NNMC fell below the applicable standard of care, or that the actions of the NNMC's providers caused the injuries she sustained. For that reason, Defendant's motion for summary judgment will be granted.

**IT IS, THEREFORE, ORDERED** that Defendant's *Motion for Judgment on the Pleadings, Pursuant to Fed.R.Civ.P. 12(c), or, in the Alternative, Motion for Summary Judgment* [Doc. 25], is **GRANTED**;

**IT IS FURTHER ORDERED** that filed October 11, 2006, and *Defendant's Motion to Enter Order Granting Motion for Judgment on the Pleadings, Pursuant to Fed.R.Civ.P. 12(c), or in the Alternative, Motion for Summary Judgment or Motion to Dismiss Pursuant to Fed.R.Civ.P. 41(b) Failure to Follow Court Orders* [Doc. 43] is **GRANTED**.

**SO ORDERED** this 25th day of June, 2007, in Albuquerque, New Mexico.

**M. CHRISTINA ARMIJO**
United States District Judge